IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

FILED

OCT 08 2026

Bonnie N. Hackler, Acting Clerk
U.S DISTRICT COURT

1. Joshua Caleb Ellard,

Plaintiff,

vs.

2. Shea Jojane Duff, Individually and in her official capacity as a Detective of the Tulsa Police Department,

3. Officer John/Jane Doe, Individually and in their official capacity as a Patrol Officer of the Tulsa Police Department, and

4. The City of Tulsa, Oklahoma,

Defendants.

26 CV - 613 GKF - SH

Case No.: ____________________

JURY TRIAL DEMANDED

CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983

Plaintiff, Joshua Caleb Ellard, appearing *pro se*, respectfully files this Civil Rights Complaint against the above-named Defendants, alleging as follows:

I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this action is brought pursuant to 42 U.S.C. § 1983 to redress violations of the First Amendment to the United States Constitution.
2. Venue is proper in the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. § 1391(b), as all material events, acts, and

IFP pending
Ø summons

omissions giving rise to these claims occurred within this judicial district.

## II. PARTIES

3. Plaintiff, Joshua Caleb Ellard, is a resident of Tulsa County, State of Oklahoma. At all times relevant, Plaintiff was a visible community advocate who operates a harm reduction program in Tulsa, Oklahoma, making his identity and activities known to personnel within the Tulsa Police Department.
4. Defendant Shea Jojane Duff was at all times relevant an active Detective employed by the Tulsa Police Department, acting under color of state law.
5. Defendant Officer John/Jane Doe was at all times relevant an active Patrol Officer employed by the Tulsa Police Department, acting under color of state law.
6. Defendant City of Tulsa is a municipal entity responsible for the policies, customs, oversight, training, and operational conduct of the Tulsa Police Department.

## III. STATEMENT OF FACTS

### A. Chronological Timeline of Events & Core Causation

7. On or about June 17, 2024, Plaintiff engaged in constitutionally protected activity under the First Amendment by formally filing a Petition for a Protective Order (PO) in the District Court of Tulsa County to seek redress from threats of violence.
8. Following the filing of the protective order, Defendant Detective Shea Duff managed an internal investigation into an underlying report concerning the Plaintiff, in which the PO defendant is the first disclosure witness. While managing this inquiry, Defendant Duff explicitly documented in official Tulsa

Police Department files that the allegations and timelines provided against Plaintiff failed to align with the actual incident timeline, thereby undermining the objective credibility of the investigation.

9. Crucially, the evidentiary exhibits central to Plaintiff's Petition for a Protective Order directly contradicted and possessed the power to completely undermine Detective Duff's entire underlying investigation, creating a powerful professional motive for Defendant Duff to suppress or derail the PO action.

10. On October 8, 2024, a formal hearing was held in the District Court of Tulsa County where a continued protective order was issued in favor of the Plaintiff. During this open court proceeding, the PO defendant stated in open court that he had a direct message for the judge from Defendant Detective Duff, asserting that the protective order needed to be dismissed because the PO defendant was an "outcry witness."

11. This relayed message constituted a bad-faith, extrajudicial attempt by Defendant Detective Duff—acting in concert with the PO defendant—to neutralize the devastating evidence contained within the protective order file, shield her own deficient investigation from public scrutiny, and intimidate Plaintiff out of pursuing judicial redress.

12. On October 10, 2024, at approximately 11:30 PM—merely 48 hours after Defendant Detective Duff's proxy threat was delivered in open court—Plaintiff was operating his distinctive classic pickup truck (highly unique, easily recognizable, and equipped with a distinct, loud exhaust system) southbound on N. Sheridan Road and executed a right-hand turn to travel westbound on E.

Apache Street in Tulsa, Oklahoma.

13. On information and belief, Defendant Detective Duff proximately set street-level physical retaliation in motion following the failure of her proxy threat at the October 8th hearing. Weaponizing her administrative access, Defendant Duff flagged or broadcasted Plaintiff's unique vehicle profile through municipal networks, explicitly targeting his vehicle for field interception by patrol units.

14. Acting in direct response to the operational target initiated by Defendant Duff, a marked Tulsa Police Department patrol SUV driven by Defendant Officer John/Jane Doe intercepted, targeted, followed, and aggressively pursued Plaintiff's vehicle.

15. Defendant Officer John/Jane Doe transitioned the police SUV into a highly reckless manner, attempted and then aborted a Precision Immobilization Technique (PIT) maneuver, and drove directly beside Plaintiff's vehicle for a half-mile on E. Apache Street to project an overt display of state-sanctioned physical intimidation, lacking any lawful traffic-enforcement justification.

16. On October 17, 2024, exactly one week after the vehicular assault on Apache Street, Plaintiff's attorney informed him that the District Attorney officially declined to file charges regarding the investigation handled by Defendant Duff. This seamless timeline demonstrates a tight temporal, causal, and operational loop orchestrated by Defendant Duff, tying her failed investigation, proxy courtroom threats, and street-level physical retaliation together.

17. Because Defendant Detective Duff's underlying investigation into a highly visible, known community advocate was completely discredited and officially dismissed,

administrative leadership within the Tulsa Police Department knew or should have known that a severe risk of street-level retaliation existed. Given the department's vast, centralized tracking architecture, TPD leadership maintained a strict operational duty to monitor its surveillance networks and auditing logs to prevent field personnel from weaponizing municipal tools against the Plaintiff. The total failure of TPD leadership to supervise its officers or audit database queries following the collapse of Duff's investigation directly permitted individual field units to safely deploy centralized surveillance software to execute extrajudicial intimidation with complete impunity.

B. Municipal Surveillance Infrastructure & Custom

17. At all times relevant, Defendant City of Tulsa operated a centralized Real-Time Information Center (RTIC) powered by integrated tracking software that logs live patrol vehicle positions, automated routing data, and public roadway surveillance, including Automated License Plate Reader (ALPR) records and Flock Safety systems.

18. Individual Defendants utilized department networks, dispatch systems, or RTIC apparatuses to track, monitor, and execute the retaliatory encounter on Apache Street, with the exact communications and electronic trails uniquely within the possession and control of Defendants and expected to be uncovered during Rule 26 discovery.

19. The City of Tulsa's deployment of centralized tracking infrastructure as a tool to monitor, catalog, and chill constitutional expression is part of a deeply ingrained municipal custom and practice that predated the October 10, 2024, incident.

Long before this encounter, following the Tulsa Police Department's decision to permanently purchase and scale its automated camera network, the ACLU of Oklahoma issued formal, comprehensive warnings directly to local municipal authorities. By overlaying the city's camera grid with local demographics, the ACLU explicitly warned city leaders that the infrastructure was being disproportionately deployed in majority Black and Hispanic neighborhoods—specifically targeting North Tulsa, East Tulsa, and the 61st & Peoria corridors. The ACLU cautioned that this targeted placement would create a discriminatory feedback loop of hyper-surveillance, directly facilitating unjustified field stops, racially biased enforcement, and extrajudicial tracking. Despite receiving this explicit, localized notice of systemic risk, the City of Tulsa deliberately chose to expand its unmonitored network to over 200 cameras without implementing protective guardrails, strict technical access audits, or warrant verification protocols.

20. In the months leading up to late 2024, civil liberties advocates fiercely criticized the Tulsa Police Department's refusal to release the exact locations of its hundreds of active cameras. Legal directors for the ACLU of Oklahoma publicly warned municipal leaders that the combination of secret camera placement, a total lack of independent oversight, and the department's 30-day data retention policy amounted to warrantless mass surveillance that directly violated the Fourth Amendment. By maintaining a policy of operational secrecy and refusing to implement strict auditing procedures, the City deliberately fostered a municipal environment where field officers and investigators could exploit a hidden

mass-surveillance network to track and target targeted individuals without judicial review.

21. The structural, deeply embedded nature of this unconstitutional custom—which the City permitted to persist despite the ACLU's pre-2024 warnings—is thoroughly corroborated by subsequent operational findings. Specifically, an investigation by the Electronic Frontier Foundation (EFF) exposed that the Tulsa Police Department logged dozens of searches using Flock Safety camera data explicitly to target, catalog, and investigate public protest and expressive activity through 2025.

22. The catastrophic constitutional risks of the City's deliberate indifference were further confirmed in this exact judicial district in *United States v. Melisa Susan Kyle* (N.D. Okla.). In that matter, a federal judge reviewed local law enforcement's systemic reliance on these automated surveillance networks and ruled that the warrantless, passive long-term tracking of a driver's location through local ALPR databases constituted a severe, unconstitutional search. By choosing to disregard the ACLU's explicit prior warnings, the City of Tulsa acted as the moving force behind the October 10, 2024, incident, creating an unmonitored, weaponized system that individual field officers could freely exploit to execute extrajudicial tracking and physical intimidation against citizens.

23. Prior to the October 2024 incident, and despite clear warning signs that its passive, long-term database tracking carried severe constitutional complications, Defendant City of Tulsa maintained a deliberate indifference to these practices. The City failed to implement proper technical safeguards, strict electronic

auditing procedures, or clear warrant requirements, allowing field officers and investigative personnel to freely utilize emergency vehicles and centralized surveillance networks as tools of extrajudicial tracking and intimidation against citizens exercising their First Amendment rights.

## IV. CAUSES OF ACTION

### COUNT I: FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

(Against Defendants Detective Duff and Officer John/Jane Doe)

22. Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

23. Plaintiff's filing of a judicial Petition for a Protective Order, and the evidentiary filings attached thereto, constitute a core exercise of his right to petition the government for redress protected under the First Amendment.

24. Defendant Officer John/Jane Doe and Defendant Detective Duff took adverse, extrajudicial, and physically hazardous actions against Plaintiff—including courtroom intimidation by proxy and reckless vehicular interception on a public roadway—that would deter a person of ordinary firmness from continuing to exercise their constitutional rights.

25. The adverse actions taken by these individual defendants were substantially motivated by Plaintiff's exercise of his protected First Amendment rights. Defendant Detective Duff possessed an acute retaliatory animus because the protective order evidence threatened to expose her deficient investigation, directly resulting in her orchestration of a proxy threat on October 8, 2024, and her subsequent targeting of Plaintiff's highly recognizable vehicle for a field

intercept on October 10, 2024.

26. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered severe emotional distress, trauma, fear for his physical safety, and financial damages.

COUNT II: CIVIL CONSPIRACY TO VIOLATE CIVIL RIGHTS (42 U.S.C. § 1983)

(Against Defendants Detective Duff and Officer John/Jane Doe)

27. Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

28. Individual Defendants Detective Duff and Officer John/Jane Doe reached an understanding, engaged in a common scheme, and acted in concert to achieve an unconstitutional objective: to intimidate, harass, and retaliate against Plaintiff for exercising his First Amendment rights.

29. In furtherance of this conspiracy, Defendant Duff provided the retaliatory animus, operational case targets, and administrative tracking parameters, while Defendant Officer Doe utilized his marked patrol apparatus to execute the physical display of force on Apache Street.

30. The collaborative, extrajudicial actions of these state actors combined to proximately cause a severe and dangerous violation of Plaintiff's clearly established constitutional rights.

COUNT III: MUNICIPAL LIABILITY / MONELL CLAIM (42 U.S.C. § 1983)

(Against Defendant City of Tulsa)

31. Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

32. Defendant City of Tulsa, through its deliberate indifference, failed to adequately train, supervise, or discipline its police officers and investigative personnel regarding the lawful limits of automated vehicular tracking, tactical maneuvers, the proper auditing of its RTIC and ALPR networks, and the absolute prohibition against using municipal infrastructure to stalk, track, or intimidate citizens.

33. At the time of the October 10, 2024, incident, the City maintained an unwritten custom, policy, or practice of allowing widespread, unsupervised, and unaudited access to its Real-Time Information Center (RTIC) networks to monitor and chill constitutional expression, creating an environment where field officers could freely deploy centralized surveillance networks as tools of extrajudicial intimidation.

34. The long-standing, structural nature of this unconstitutional custom within local law enforcement operations is explicitly corroborated by a subsequent investigation by the Electronic Frontier Foundation (EFF), which exposed that the Tulsa Police Department logged dozens of searches using Flock Safety camera data specifically to target and investigate public protest and expressive activity through 2025.

35. The existence of this systemic, warrantless surveillance custom during the relevant timeframe is further established by subsequent regional case law within this exact federal district, specifically this Court's ruling in *United States v. Melisa Susan Kyle* (N.D. Okla.), which determined that local law enforcement's long-standing use of automated surveillance systems to engage in warrantless, passive tracking of a driver's historical location through local Flock Safety ALPR

databases constituted an unconstitutional search.

36. The City's failure to implement proper technical safeguards, strict auditing procedures, or warrant requirements prior to October 2024 acted as the moving force behind the dangerous encounter on Apache Street, directly resulting in the violation of Plaintiff's constitutional rights.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, granting the following relief:

37. Actual and compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial, to redress the severe emotional distress, trauma, fear for physical safety, and financial injuries directly caused by Defendants' unconstitutional conduct;

38. Punitive damages against Defendant Detective Shea Duff and Defendant Officer John/Jane Doe in their individual capacities, in an amount to be determined at trial, for their willful, bad-faith, malicious, and reckless disregard of Plaintiff's clearly established constitutional rights;

39. An award of reasonable court costs, filing fees, and expenses incurred by Plaintiff in the litigation of this action; and

40. Any such further legal or equitable relief as this Court deems just, proper, and mandatory under the circumstances.

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATE: October 8, 2026

BY: ______________________

Joshua Caleb Ellard, Plaintiff Pro Se

4252 E Young St

Tulsa, OK 74115

918-924-0821 | joshe@okhra.net

VERIFICATION

I, Joshua Caleb Ellard, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that I am the Plaintiff in the above-styled action, that I have read the foregoing Civil Rights Complaint, and that the factual allegations contained therein are true, accurate, and correct to the best of my knowledge, information, and belief.

Executed on this 8 day of October, 2026.

______________________________

Joshua Caleb Ellard, Plaintiff Pro Se

4252 E Young St

Tulsa, OK 74115

918-924-0821 | joshe@okhra.net